**In the Matter of Billy T. JONES, Bankrupt.**

**No. DBK 6930–K.**

United States District Court,
N. D. Mississippi,
Delta Division.

July 8, 1970.

William E. Corr, Jr., Sardis, Miss., for petitioner.

Ted L. Smith, Batesville, Miss., for bankrupt.

Andrew C. Baker, Charleston, Miss., Trustee in Bankruptcy.

## MEMORANDUM OPINION

KEADY, Chief Judge.

On June 18, 1969, Billy T. Jones was duly adjudged a bankrupt upon the filing of his voluntary petition in bankruptcy. At the first meeting of creditors on July 3, 1969, Andrew C. Baker was appointed trustee in bankruptcy, which appointment was on the same date approved by the Referee.

On March 4, 1970, William A. Jones, father of the bankrupt, filed a petition for reclamation and release of $3,179.74 allegedly held by Agricultural Stabilization and Conservation Service (ASCS) of Panola County, Mississippi, as cotton production payments for which the bankrupt had signed up in the early part of 1969 when he indicated an intention to operate the farm property subject to ASCS agreement; by his petition, William A. Jones alleged that the bankrupt did not, in fact, plant or cultivate the cotton acreage subject to the ASCS agreement, and that he, petitioner, had actually produced the 1969 cotton crop and was entitled to receive the said cotton production payments.

On June 2, 1970, an evidentiary hearing was conducted before the court due to the disqualification of Honorable Eugene J. Raphael, Referee in Bankruptcy, who acted as attorney for the trustee prior to his appointment as Referee. The essential facts are not in dispute. In early 1969 Billy T. Jones, the bankrupt, had under his control four tracts of land, three of which were rented by him from third parties and the other owned by William A. Jones. The previous year he had farmed these tracts with a cotton allotment of approximately 52 acres, and signed up for 1969 cotton production payments with ASCS during the regular February-March sign-up period, indicating at that time his intention to produce a cotton crop. In mid-March 1969 the bankrupt went to work for the State Department of Agriculture and was away from the farm property for a period of five weeks following Easter Sunday, which occurred on April 6, 1969. He, in fact, expended no efforts on making any 1969 crops. William A. Jones, then about 63 years of age and in poor health suffering from vertigo, owned some farm equipment in common with the bankrupt and he, with the help of his neighbors, planted, cultivated and harvested a cotton crop on the aforesaid tracts of land. The bankrupt did not at any time execute an assignment of the program payments to petitioner, nor did he ever notify ASCS that he was no longer the farm operator and crop producer and that had been succeeded in interest by William A. Jones.

Cotton support payments for Panola County farmers were due to be released on September 1, 1969, and payment checks, including one for $3,179.74 made out to the bankrupt, were prepared during the preceding month. The trustee in bankruptcy in late August notified ASCS of the fact of Billy T. Jones' bankruptcy and demanded the funds on behalf of the bankrupt's creditors. The trustee did not take possession of a cotton crop, nor did he have any connection with its cultivation, harvesting and sale. Soon after this demand by the trustee,

William A. Jones notified ASCS of his claim to the crop production payment, stating he was the actual producer of the crop, and requesting that the funds be paid to him. Thereafter William A. Jones completed the crop harvest.

During the latter part of October, the Panola County ASCS committee met, received testimony from witnesses and made a factual determination that William A. Jones was the crop producer and entitled to receive the program payments. The government check, which had been originally made in favor of Billy T. Jones, was never released and was voided, as per regulation, at the expiration of 30 days from issue date. The trustee in bankruptcy admits that this determination was made by the Panola County ASCS committee but denies that it should be controlling in this dispute.

Three issues arise for our decision. They are:

(1) Are the funds withheld by ASCS within the "possession" of the bankruptcy court so as to afford summary jurisdiction?

(2) Has petitioner carried the burden of proof in this reclamation proceeding to establish his right to receive the funds in question?

(3) What effect, if any, is to be given by this court to the factual determination made by ASCS?

■ As to the first question, it is well settled that the bankruptcy court's exclusive jurisdiction "is not limited to actual possession but extends to constructive possession as well, including property held not only by but for the bankrupt", 2 Collier on Bankruptcy, 14th Ed., § 23.05, p. 479. This rule applies to property in the hands of the bankrupt's agent or other person making no claim to it. Ibid 482–3. "Where the intangible consists of a chose in action, such as a debt owed the bankrupt or a contract claim, such intangible may be said to be in the constructive possession of the bankruptcy court so as to enable the court summarily to determine the rights of various claimants to the chose in action, if the bankrupt remained the legal owner up to the time of the filing of the petition." Ibid 487. ASCS, by withholding the funds, was not itself making any claim adverse to the bankrupt but merely asserted that a person other than the bankrupt was the beneficial owner. Under such circumstances the withheld funds may be regarded as being within the constructive possession of the bankruptcy court. Moreover, since the adverse claimant, William A. Jones, by the filing of his reclamation petition has voluntarily submitted the question of his claim for the bankruptcy court's determination, jurisdiction has thus been conferred by consent, so that neither the trustee nor the claimant may question summary jurisdiction or contend that a plenary action naming ASCS as a party should have been instituted. Collier, supra, p. 547–8.

■ Regarding the burden of proof, a reclamation petition is basically a proceeding by a claimant not in possession asserting title against a trustee in bankruptcy who is in possession. The familiar rule is that "[T]o regain such property the claimant must affirmatively establish his own right to possession by proving ownership, absolute or qualified. Thus the general burden of proof is on the claimant, and where he fails to sustain this burden his petition will be denied. 4 Collier, Bankruptcy, § 70.-39(3) at 1312." Allen v. Lokey, 307 F. 2d 353 (5 Cir. 1962). This burden is upon petitioner to adduce "facts sufficient to establish that its [his] claim to possession is superior to the prima facie right of the trustee." National Silver Co. v. Nicholas, 205 F.2d 52 (5 Cir. 1953). In this case because of illness petitioner did not appear and testify and chiefly relied upon establishing that such cotton production payments are payable only to a crop producer, and after the conflicting claims arose, the ASCS Panola County committee, upon hearing evidence, made a factual determination that William A. Jones was the only person eligible to receive payment

and that he was entitled to 100% thereof. The petitioner also offered on his behalf W. T. McLemore, County Extension Agent, who was one of the witnesses who appeared before the ASCS committee. Mr. McLemore's testimony was of a general nature that during 1969 William A. Jones and Billy T. Jones did not farm together, that William A. Jones, with the help of his neighbor, a Mr. Parnell, planted, cultivated and harvested the crop, and, to the witness' knowledge, the bankrupt did not contribute anything to the farming operation or help in the cotton crop production. On cross-examination Mr. McLemore acknowledged that he did not know who rented or owned the lands in question or who had signed up for the ASCS payments, and that he had no knowledge of what records were on file with ASCS. No other witness testified directly as to the farming operation except Billy T. Jones, the bankrupt, who was offered by the trustee. The bankrupt acknowledged that his sworn petition which was dated June 7, 1969, listed his occupation as "farmer" as well as merchant and the three lessors of the farm leases to him as his creditors entitled to priority under the Bankruptcy Act. Of course, the testimony of the bankrupt in derogation of the trustee's title may not be considered and is to that extent here disregarded. 9 Am.Jur.2d, Bankruptcy § 1203, p. 891. In the absence of giving consideration to ASCS determination, it is plain that petitioner has failed to offer evidence sufficiently convincing to overcome the "prima facie right" of the trustee to the withheld funds, but if, on the other hand, that administrative determination has such force as to entitle it to recognition and acceptance by this court, petitioner may thereby be saved and held entitled to recover. In the final analysis, whether or not this court gives recognition to the ASCS determination will be decisive of the outcome.

Payments are made to cotton farmers for acreage diversion and price support under federal farm programs, and the particular funds in question are controlled by regulations promulgated by the United States Department of Agriculture for the 1968–69 Upland Cotton Program. These regulations are found in 7 C.F.R., Agriculture, Chap. 7, §§ 722.801, et seq. The object of the regulations is to prescribe the terms and conditions under which diversion and price support payments are made to producers who divert acreage from the production of cotton to approved conservation uses. A basic condition is that the farm operator must elect to participate in the program by timely filing Form 387 indicating his intention to participate and specifying the acreage to be diverted to one or more of the approved conservation uses. Payments are calculated in accordance with detailed formula fixed by the regulations and may be made only to a person or persons who are producers as defined by the regulations. As provided by § 722.804(c) (1), the producer "must be a person who produces upland cotton in the current year as landowner, landlord, tenant, or sharecropper, or would have so produced a crop of cotton if such crop had been produced on the acreage diverted under the program." By § 722.-808 the acreage planted to cotton on the farm shall not exceed the acreage determined by subtracting the stated intention from the farm acreage allotment, and by § 722.815 no payment may be due to any producer until the farm operator "certifies that the farm is in compliance with the requirements of the program and the county committee determines that the producers and the farm are in compliance with such requirements." There are specific regulations dealing with successors-in-interest as provided by § 722.818 set out in the margin below.[1]

---

1. 7 C.F.R. § 722.818 effective for the year 1969, provides as follows:

"(b) When any person who would have had an interest as producer (herein called 'predecessor') in cotton if it had been produced on the diverted acreage has been succeeded on the farm by another producer (herein called 'successor') after

In brief, the regulations provide that in those cases where the operator or producer who originally signed up in the program has been succeeded on the farm by another producer, ASCS payments shall be divided between the original producer and the successor producer in such manner as the two parties may agree. If the persons are unable to agree upon the division of payment, the ASCS county committee "shall determine the division of the payment", taking into consideration the respective interests and contributions of the predecessor and successor with respect to production, acreage diversion and conservation uses on the diverted acreage. As for the price support payment, in contradistinction to the acreage diversion allowance, where the predecessor and successor are unable to agree upon a division of it, the price support payment shall be issued to the producer who has interest in the crop at the time of harvest or at the time of its destruction. By § 722.823 the state ASCS committee is granted supervisory authority over the actions taken by the county committee and may "(a) correct or require a county committee to correct any action taken by such county committee which is not in accordance with the regulations of this subpart, or (b) require a county committee to withhold taking any action which is not in accordance with the regulations." Finally, it may be observed

that the entire ASCS program is administered under the general supervision of the Administrator, ASCS, and by § 722.-803, it "shall be carried out in the field by Agricultural Stabilization and Conservation State and county committees and ASCS commodity offices."

 In the case at bar it was not shown that Billy T. Jones, who had signed the requisite Form 387 prior to his being adjudged a bankrupt, ever agreed with William A. Jones upon a division of the acreage diversion and price support payments and submitted evidence of such agreement to the ASCS county committee. Upon the adjudication of bankruptcy, the trustee immediately succeeded to the bankrupt's interest, whatever it might be, in the payments, and the trustee failed, or was unable, to agree with petitioner, the successor producer, concerning a proper division of the ASCS payments for either acreage diversion or price support. Under these circumstances the ASCS county committee of Panola County became vested with authority to determine proper division of acreage diversion payments in accordance with the requirements of the regulation; and further with respect to the price support payment, it was required to be paid to the person adjudged to be the producer having the interest in the crop at the time of its harvest, or if not harvested at the time of its destruction. The findings of

---

Form 378 has been filed, the share of the advance and final diversion payment to which they are entitled shall be divided between them on such basis as the predecessor and successor agree is fair and equitable. *If such persons are unable to agree to a division of the payments, the county committee shall determine the division of the payments taking into consideration the following, among other factors it deems pertinent:*

(1) *The respective interests which the predecessor and successor would have had in cotton if it had been produced on the diverted acreage;*

(2) *The respective contributions to the diversion in acreage which have been made by the predecessor and by the successor; and*

(3) *The respective contributions of the predecessor and successor to the establishment and maintenance of the conservation uses on the diverted acreage.*

\* \* \* \* \*

(d) The price support payment to the predecessor and successor shall be divided on such basis as they agree is fair and equitable. *If such persons are unable to agree to a division of the price support payment, the price support payment shall be issued to the producer who has the interest in the crop at the time of harvest, and if the crop is completely destroyed prior to harvest, the price support payment shall be issued to the producer who had the interest at the time of destruction of the crop."* (Emphasis added)

the ASCS county committee in favor of petitioner were subject to correction on appeal by the State committee, but the trustee took no such appeal.

Thus, it now appears that the ASCS county committee has made an administrative determination of certain factual matters in accordance with criteria prescribed by applicable federal regulations, and in its determination that body acted upon relevant evidence based upon what it found to be the facts. There is no claim that the county committee's decision was induced by fraud, mistake, or is arbitrary, capricious and without evidentiary support. "As a general proposition, it may be stated that the courts cannot or will not annul, reverse, set aside, or disturb the action of an administrative agency which is within its jurisdiction or not beyond its powers or authority, and which is not contrary to law or illegal, or fraudulent, or which has a reasonable basis, and is not arbitrary or capricious, or an abuse of discretion. Thus determinations of fact by an administrative agency, or determinations made in the proper exercise of discretionary or administrative, legislative, executive, or judicial functions, or of exclusive or primary jurisdiction, vested by the legislature in administrative agencies, are conclusive upon the courts." 2 Am.Jur.2d, Administrative Law, § 645, pp. 494–496. In Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995, the Supreme Court approved the principle that the duty of judicial review is at an end when it becomes evident that the action of an administrative agency is based upon substantial evidence and is consistent with the authority granted by Congress.

Neither side has cited any judicial decisions relating to administrative determinations in disputes concerning farm subsidy payments. The trustee's position is that while the ASCS determination may be regarded as correct, this presumption is merely prima facie and not conclusive, so that the court may consider the question anew on the evidence presented before it. We disagree, as it is our view that the ASCS determination of factual matters which relate to eligibility to receive government farm subsidy payments is, in this instance, of binding and conclusive effect, and precludes judicial review under the circumstances. Moreover, if only rebuttable validity is given to the ASCS finding, the trustee has failed to demonstrate that it is factually erroneous. It is undisputed that the trustee did not take physical possession of a growing cotton crop, that the crop was in fact harvested by petitioner, that petitioner had such an interest in the crop as clearly entitled him to some share of the payment; and finally, at best, there are conflicting inferences as to whether the bankrupt ever had an actual interest as original producer, subsequent to his signing Form 387. Thus, the ASCS determination is an adequate basis for allowing petitioner to recover upon his reclamation petition.

Since petitioner has shown his lawful right to receive the sum of $3,179.74 withheld by ASCS, his petition will be sustained and ASCS ordered to release the funds to petitioner free of all claims of the trustee in bankruptcy and the bankrupt's estate.